UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO: 1:19-CV-00268-MOC

| | |
|---|---|
| **JAMISON DIGREGORIO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**THIS MATTER** comes before the Court on judicial review of a final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff filed a Motion for Summary Judgment, requesting reversal and remand for rehearing. (Doc. No. 9). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (Doc. No. 11). As explained below, the Court denies Plaintiff's motion, grants the Commissioner's motion, and affirms the finding of non-disability.

**I.    BACKGROUND**

**A.    Administrative Exhaustion**

In March 2016, Plaintiff filed applications for disability insurance benefits under Title II, and supplemental security income under Title XVI, of the Social Security Act (the "Act"), alleging he had been disabled since July 1, 2014. (Doc. No. 6-1 at 18). Plaintiff's claims were denied initially and upon reconsideration, so he filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Id.). The ALJ held a hearing on June 7, 2018, for *de novo* consideration of Plaintiff's claims. (Id.). On September 25, 2018, the ALJ issued a decision, concluding Plaintiff was not disabled within the meaning of the Act. (Id. at 40). The Appeals

Council denied Plaintiff's request for review on July 28, 2019, rendering the ALJ's decision final and thus reviewable by this Court. (Id. at 6). Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Social Security Act states that "an individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries their burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

### C. The Administrative Decision

The issue before the ALJ was whether Plaintiff was disabled from July 1, 2014, Plaintiff's alleged onset date, to the date of the decision. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled within the meaning of the Act.

To begin, the ALJ recognized at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Doc. No. 6-1 at 20). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: autism spectrum disorder, including Asperger's syndrome; attention-deficit hyperactivity disorder; generalized anxiety disorder; affective disorder; epilepsy; and obesity. (Id.). The ALJ also found that Plaintiff suffered from the following non-severe impairments: symptoms related to all physical conditions other than obesity and epilepsy, including neck and foot pain. (Id. at 21).

At step three, the ALJ decided Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Id. at 21). Next, the ALJ found Plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. §§ 404.1567 and 416.967, except he could have no exposure to workplace hazards. (Id. at 25). Additionally, the ALJ restricted Plaintiff to: simple, routine tasks performed two hours at a time; no fast-paced production-rate work; and few, if any, changes in the work setting. (Id.). Finally, the ALJ limited Plaintiff to occasional interaction with the public, coworkers, and supervisors. (Id.).

After recognizing Plaintiff had no past relevant work, the ALJ concluded at step five that he could perform jobs that exist in significant numbers in the national economy, including: auto detailer; janitor; and order picker. (Id. at 38–39). Because such work existed, the ALJ held Plaintiff was not disabled under the Act. (Id. at 40).

3

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct de novo review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance." Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances,

4

is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

In this case, Plaintiff alleges three principal reasons that the Court should remand this case to the ALJ for reconsideration. First, the ALJ failed to give substantial weight to a prior Medicaid decision by the North Carolina Department of Health and Human Services ("NCDHHS") and did not justify that with persuasive, specific, and valid reasons for doing so. (Doc. No. 10 at 5–14). Second, the ALJ did not properly explain how she weighed certain medical opinions in the record. (Id. at 14–19). Finally, the ALJ's decision should be vacated because she was not properly appointed under the Appointments Clause of the United States Constitution at the time she rendered her decision. (Id. at 19–21). The Court discusses and rejects these contentions in turn.

### A. Prior State Medicaid Decision

To begin, Plaintiff first complains that the ALJ failed to give substantial weight to a prior Medicaid decision by NCDHHS. Generally, disability decisions by other entities do not bind the Commissioner. See 20 C.F.R. § 404.1504. Even so, the ALJ must "evaluate all the evidence in the case record that may have a bearing on [a] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." SSR 06–03P, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).[1] And the ALJ "should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at 45,597; see Bird 699 F.3d at 343.

---

[1] SSR 06–03P was rescinded on March 27, 2017, but remains effective for Plaintiff's claim of disability, as he filed before the rescission date.

In Woods v. Berryhill, the Fourth Circuit articulated the "precise weight" an ALJ must give to a state agency's disability determination generally and a decision by the NCDHHS in particular. 888 F.3d 686, 692 (4th Cir. 2018). Recognizing the "purpose and evaluation methodology" of such hearings are "closely related" to hearings before the Social Security Administration, the Court held that prior state agency disability decisions ordinarily should be afforded "substantial weight" by the ALJ. Id. (quoting Bird, 699 F.3d at 343). But an ALJ "may deviate from this default rule and accord . . . less than 'substantial weight' if 'the record before the ALJ clearly demonstrates that such a deviation is appropriate.'" Id. (quoting Bird, 699 F.3d at 343). To deviate, the ALJ "must give 'persuasive, specific, valid reasons for doing so that are supported by the record.'" Id. (citations omitted). For example, an ALJ could cite what parts of the agency's disability determination are not credible and why other evidence in the record is more compelling. See id.

In this case, before the ALJ issued its finding of non-disability, the NCDHHS concluded that Plaintiff met the requirements for Medicaid for the Disabled. (Doc. No. 6-1 at 340–42). In a decision dated November 7, 2016, NCDHHS found that Plaintiff "has significant problems handling the stress of normal day-to-day activities" and that "[a]ny change in routine causes [him] anxiety and frustration." (Id. at 341). Likewise, Plaintiff "is provided special consideration and allowances in his current job such as being able to take time off and remove himself from situations that cause normal day-to-day stress." (Id.). Plaintiff is also "given extra time to complete basic work tasks" and this "basic work activity leaves him mentally exhausted even though he is working only a part time basis." (Id.). On those factual findings, NCDHHS found that Plaintiff's testimony "clearly substantiated the alleged level of disability." (Id.).

Plaintiff asserts this NCDHHS decision "recognizes that [his] past work involves accommodations such as close supervision, sheltered settings, singulars tasks to perform, and part-

6

time hours," which in turn "does not evidence an ability to perform full-time competitive work." (Doc. No. 10 at 13). According to him, the ALJ "erred by failing to assign substantial weight to [this] determination as she did not cite to specific, persuasive, and valid reasons for" concluding otherwise. (Id.). The Court disagrees.

After discussing Woods, the ALJ concluded that "the record as a whole" indicated that "the opinion of NCDHHS regarding the claimant's eligibility for Medicaid [deserved] limited weight rather than substantial weight." (Doc. No. 6-1 at 34). In particular, the ALJ found that the NCDHHS decision was inconsistent with Plaintiff's "successes . . . discussed throughout [the] decision." (Id. at 24). For example, the ALJ relied on medical evidence that indicated Plaintiff "could handle his own finances," "possesses the abilities and aptitude for independent living, if he had additional training and financial help[,]" and "should slowly transition to a full-time position with guidance from a job skills coach." (Id.). Of course, the ALJ also acknowledged Plaintiff's limitations, which were also identified by NCDHHS in its decisions. But the ALJ concluded that these limitations were "consistent with the restrictions" she adopted in crafting Plaintiff's residual functional capacity. (Id.).[2] Because the ALJ provided persuasive, specific, and valid reasons for affording the NCDHHS decision less than substantial weight, she did not err in its analysis.

B. **Medical Opinion Evidence**

Plaintiff next complains that the ALJ erred by failing to clearly explain how she weighed the medical opinions of Dr. David Ward, his primary care physician, and Dr. Carolyn Conroy, the

---

[2] Contrary to Plaintiff's protestations otherwise, the NCDHHS decision nowhere limits him to work involving special conditions. Rather, the decision simply acknowledges that his employer chose to provide such conditions to him. (Doc. No. 6-1 at 340–42). In any event, the ALJ provided substantial, persuasive, and valid reasons for rejecting such special conditions: medical evidence suggested that appropriate limitations—specifically, those adopted in the residual functional capacity analysis—would allow him to "transition to a full-time position." (Id. at 24).

7

psychological consultative examiner in this case. When making a disability decision, the ALJ must "always consider the medical opinions in [a] case." 20 C.F.R. §§ 404.1527(b), 416.927(b). This includes the medical opinions of non-treating and non-examining physicians. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see, e.g., Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017); Smith, 795 F.2d at 346. Generally, the ALJ gives "controlling weight" to the medical opinion of a treating physician. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). But, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting Craig was superseded by subsequent regulation but finding its holding consistent with those regulations).

Where a treating source's medical opinion is not afforded controlling weight, the ALJ may consider a host of non-exhaustive factors in deciding the weight to give any medical opinion, including: (1) the examining relationship, (2) the nature, extent, frequency, and length of treatment relationship, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record as a whole, and (5) whether the physician is a specialist. See 20 C.F.R. §§ 404.1527(c), 416.927(c); see also Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (same). Of course, however the ALJ ultimately weighs the evidence, they "must both identify evidence that supports [their] conclusion and build an accurate and logical bridge from that evidence to [their] conclusion." Woods, 888 F.3d at 694 (alterations omitted); see Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (same).

Here, Plaintiff first complains the ALJ erred by failing to give controlling weight to Dr. Ward's medical opinion "that due to his low energy and somnolence, [Plaintiff] could not work more than part-time hours." (Doc. No. 10 at 18). The ALJ acknowledged this opinion, as well as

8

Case 1:19-cv-00268-MOC   Document 14   Filed 08/03/20   Page 8 of 14

Dr. Ward's belief that Plaintiff "could work only part-time, typically, 4 hours per day." (Doc. No. 6-1 at 22–24). Even so, the ALJ afforded this opinion "limited weight rather than controlling weight" for several reasons, including the fact that his opinion conflicted[3] with the opinions "from other treating sources," the "findings at a consultative examination," "third party statements," and Plaintiff's own "subjective remarks." (Id. at 31). Of note, Plaintiff's father testified that Plaintiff's treatments help some, that he completes a treatment after work and is then okay for some time, and that Plaintiff does not get angry. (Id. at 23). Plaintiff's mother did not report that he has trouble with basic tasks and movements and reported that he is capable of doing a number of activities, such as personal care and preparing simple meals. (Id.). Dr. Conroy "indicated [Plaintiff] should slowly transition to a full-time position with guidance from a job skills coach." (Id. at 24). And Dr. Ward himself testified that Plaintiff could handle his own finances. (Id.). Accepting the weight of this evidence over Dr. Ward's opinion, the ALJ also noted that Dr. Ward is "not necessarily a specialist in the treatment of neurological and mental conditions" and he merely provided "conservative care." (Id.). The ALJ carefully explained why she discounted Dr. Ward's opinion.

Plaintiff also maintains that the ALJ failed to explain why certain limitations identified by Dr. Conroy were not incorporated into his residual functional capacity finding. Specifically, despite Dr. Conroy's opinion that he "should slowly transition to a full-time position with guidance from a job skills coach," the ALJ did not include any limitations related to that opinion. (Id. at 24; see Doc. No. 10 at 16). But, the ALJ explained that she provided just "partial weight" to this

---

[3] Plaintiff complains that the ALJ's evaluation of Dr. Ward's medical opinion is "internally contradictory" because she indicated that she would not "give controlling weight" to Dr. Ward's opinion, as it was "<u>not</u> <u>in</u>consistent with other substantial evidence in the record," then went on to list inconsistencies. (Doc. No. 10 at 17 (emphases added)). The Court will not apply such a pedantic reading to the ALJ's opinion, as this would require the Court to assume the ALJ does not understand basic principles of Social Security. The ALJ's decision immediately began to list inconsistencies, so it is clear that this use of a double negative was merely a typographical error.

9

opinion because the doctor had "no treating relationship with the claimant" and had "evaluated the claimant on just one occasion." (Id. at 28–29). Rather than wholesale adopting her limitations, the ALJ strove to craft a residual functional capacity "in light of the entire record." (Id.). For example, in contrast to needing job skills training, the ALJ noted that Plaintiff's employer "believed that [he] was capable of training new employees." (Id. at 23). And the ALJ's adopted limitations were consistent with those recommended by state agency sources. (Id. at 30). Again, the ALJ carefully explained how she evaluated and weighed the medical opinion of Dr. Conroy.

In sum, because the ALJ carefully explained how she evaluated and weighed the medical opinions, she did not err in her analysis.

### C. Appointments Clause

Lastly, Plaintiff asserts the ALJ's decision must be vacated because she is an inferior officer within the meaning of the Appointment Clause of the United States Constitution and was not constitutionally appointed at the time she issued her decision. (Doc. No. 10 at 19). In support, Plaintiff relies on Lucia v. S.E.C., which held that ALJs of the Securities and Exchange Commission are "Officers of the United States" who must be appointed by the President, a court of law, or a head of department. 138 S. Ct. 2044, 2051–55 (2018). But Lucia also recognized that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." Id. at 2055 (emphasis added). Here, Plaintiff did not raise his Appointments Clause challenge at any point during the administrative process— neither before the ALJ nor before the Appeals Council. Therefore, the Court must decide the preliminary question of whether Plaintiff's challenge is timely.

On several occasions, this Court has held that a claimant must raise their Appointments Clause challenge during the administrative process to preserve it for judicial review. See, e.g.,

Wampler v. Saul, No. 1:19-CV-92, 2019 WL 6404403, at *6 (W.D.N.C. Nov. 27, 2019); Weatherman v. Berryhill, No. 5:18-CV-45, 2018 WL 6492957, at *4 (W.D.N.C. Dec. 10, 2018). Two Circuits have recognized the same. See Davis v. Saul, 963 F.3d 790 (8th Cir. 2020); Carr v. Comm'r, SSA, 961 F.3d 1267, 1270 (10th Cir. 2020). And a clear majority of district courts have agreed as well. See, e.g., Griffin v. Comm'r of Soc. Sec., No. 18-CV-85, 2020 WL 733886, at *10 (N.D. Iowa Feb. 13, 2020) (collecting recent cases from 28 other districts). For reasons explained below, the Court continues to adhere to its prior conclusion.

Generally, "an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court." Sims v. Apfel, 530 U.S. 103, 112 (2000) (O'Connor, concurring in part and concurring in the judgment). Courts require issue exhaustion "because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan, 503 U.S. 140, 145 (1992). In deciding whether to waive exhaustion here, courts are "guided by the policies underlying the [general] exhaustion requirement." Bowen v. City of New York, 476 U.S. 467, 484 (1986). Those policies are well-served by requiring Plaintiff to raise his Appointments Clause challenge before the Social Security Administration.

First, requiring exhaustion provides the agency with "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Woodford v. Ngo, 548 U.S. 81, 89 (2006). In other words, if Plaintiff and several other claimants alerted the agency of an Appointments Clause issue, then the agency could prophylactically act to avoid an "accumulating risk of wholesale reversals." Carr, 961 F.3d at 1273 (citation omitted). Several corrective actions are possible. For example, the ALJ could withdraw from specific cases. See 20 C.F.R. § 404.940. And "even if an individual ALJ was powerless to address the [larger question regarding the] constitutionality of her appointment, the agency head—alerted to the issue

11

by claimants in the adjudicatory process—could [take] steps through ratification or new appointments to address the objection." Davis, 963 F.3d at 790. Indeed, in the wake of Lucia, the Social Security Administration has established procedures for "review based on a timely-raised Appointments Clause challenge." SSR 19–01P, 84 Fed. Reg. 9582-02 (Mar. 19, 2019).

Second, exhaustion promotes both judicial and agency efficiency. If Plaintiff would have raised his Appointments Clause before the agency, he "could have saved the judiciary the time and expense of this litigation and the scores of similar cases on appeal around the country." Carr, 961 F.3d at 1273. Instead, Plaintiff waited until he received an unfavorable disability decision to challenge the ALJ's authority to hear the entire case. The Court will not countenance Plaintiff's attempts to take a proverbial second bite at the apple. See Davis, 963 F.3d at 790 (recognizing the "perverse incentives that could be created by allowing claimants to litigate benefits before an ALJ without objection and then, if unsuccessful, to secure a remand for a second chance based on an unexhausted argument about how the ALJ was appointed").

Resisting this conclusion, Plaintiff refers the Court to the Third Circuit's contrary holding in Cirko v. Commissioner of Social Security, 948 F.3d 148, 156 (3d Cir. 2020). Relying on a plurality opinion from Sims v. Apfel, 530 U.S. at 111, the Third Circuit reasoned that Appointments Clause issue exhaustion should not be required because disability proceedings before the Social Security Administration are "inquisitorial" and not "adversarial." Cirko, 948 F.3d at 156. Generally, the Court agrees; on several occasions, this Court has recognized that the ALJ must "explore all relevant facts and inquire into the issues necessary for adequate development of the record." Debty v. Saul, No. 1:18-CV-344, 2019 WL 4594179, at *4 (W.D.N.C. Sept. 20, 2019) (quoting Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)), appeal dismissed, No. 19-2318, 2020 WL 2551053 (4th Cir. Feb. 25, 2020). But even though the ALJ's

12

development of the record regarding benefits is "largely non-adversarial," the same cannot be said about Appointments Clause challenges. Carr, 961 F.3d at 1273. In fact, relevant regulations make clear that a claimant "must notify the administrative law judge at [the] earliest opportunity" if they "object to the administrative law judge who will conduct the hearing." 20 C.F.R. § 404.940.

The Third Circuit also asserts that issue exhaustion is unwarranted because it would "prejudice those claimants who go unrepresented at their ALJ hearings and then, perhaps with the benefit of counsel, [could] seek to raise such a claim in federal court." Cirko, 948 F.3d at 157. Of course, while such a critique could apply in almost any proceeding, courts nevertheless continue to apply doctrines of waiver and exhaustion against *pro se* litigants. But even assuming courts would ignore those doctrines for claims raised by *pro se* litigants, that exception need not apply to claimants who are represented in social security disability proceedings. Plaintiff was represented by excellent counsel in the administrative proceedings. (Doc. No. 6-1 at 18). Thus, the decision of how to address Appointments Clause exhaustion for *pro se* claimants is neither here nor there.

For the foregoing reasons, this is not "one of those rare cases in which [courts] should exercise [their] discretion" to consider a non-exhausted claim. Freytag v. Comm'r, 501 U.S. 868, 879 (1991). Because Plaintiff failed to raise his Appointments Clause challenge in the administrative proceeding, he has forfeited this claim at this stage.

### III. CONCLUSION

The final decision of the ALJ gave persuasive, specific, and valid reasons for deciding against giving substantial weight to the NCDHHS Medicaid decision. It also explained how the ALJ evaluated and weighed medical opinion evidence. And Plaintiff forfeited his Appointments Clause claim by failing to raise it during administrative proceedings. Therefore, the final decision of the ALJ is affirmed and this action is dismissed.

# ORDER

**IT IS, THEREFORE, ORDERED** that: the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**; Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and this action is **DISMISSED**.

Signed: August 3, 2020

Max O. Cogburn Jr
United States District Judge